**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 67-12589 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DESOTO PARISH SCHOOL BOARD | |

**MEMORANDUM RULING**

Before the Court is a Motion to Intervene (Record Document 53) filed by the Pelican All-Saints High School Benefit Society, Ronda Clark, Tracy Thomas, James Turner, and Dori Clark ("Movants"). Movants filed the instant motion pursuant to Federal Rule of Civil Procedure 24, arguing they are entitled to intervention as a matter of right. See Record Documents 53-55. Both the Plaintiff, the United States of America ("the United States"), and the Defendant, the DeSoto Parish School Board ("the School Board"), oppose the motion. See Record Documents 60 & 61. For the reasons set forth below, the Motion to Intervene is **DENIED**.

**BACKGROUND**

The United States filed this school desegregation case against the School Board in 1967, over 45 years ago. On January 30, 1970, this Court entered a desegregation order requiring the School Board to dismantle its dual school system. The desegregation order has been modified several times since 1970, most recently in December 2011 with respect to student transfers.

Recently, the United States has been monitoring the School Board's student assignment practices and evaluating proposed plans for school closures and expansions. Since January 2012, the United States has requested information on the aforementioned

issues from the School Board on at least six occasions. The School Board has responded each time. Additionally, in February 2013, the United States toured the school district, visited each school campus, and interviewed school officials, all in an effort to evaluate the School Board's compliance with the desegregation orders.

During this same time period, the School Board held community meetings regarding potential school closures. On March 14, 2013, the School Board voted to seek judicial authorization to close Pelican All-Saints High School starting with the 2013-2014 school year. The United States received phone calls and messages from 70 current or former community members regarding their concerns about the School Board's proposal to close the school. Since April 2013, the United States and the School Board have been negotiating issues relating to school closure, school expansion, and student assignment. The United States has relied on information collected from both the School Board and the community to inform its position in relation to these negotiations.[1]

Movants filed their Motion to Intervene on May 16, 2013. Movants include the Pelican All-Saints High School Benefit Society, an unincorporated association of individuals who have children who attend Pelican All-Saints High School or who attended Pelican or live in the area near Pelican; Ronda Clark, a citizen who has a child in Pelican; Tracy Thomas, a citizen of DeSoto Parish and graduate of Pelican, who lives in the area; James

---

[1]The School Board has now filed a Motion for Authorization to Close Pelican All-Saints High School. See Record Document 57. Additionally, the School Board has filed a Motion to Increase Student Capacity at North DeSoto Schools and Student Reassignment. See Record Document 58. While the United States does not oppose either motion, it did require certain conditions of approval. See Record Document 57-1 at 3-4. Both motions are currently pending before the undersigned and will be set for hearing in due course.

Turner, a citizen of DeSoto Parish with family members who attend Pelican; and Doris Clark, a graduate of Pelican who lives near the school and who has family members who presently attend Pelican. Movants argue "they are so situated that the disposition of the action may and will impair and impede [their] ability to protect their interest since the . . . School Board has already recently voted to close Pelican and the closing would have [negative] impact." Record Document 55 at 2. The impacts cited are:

    a.    The closing of Pelican would likely result in a forty mile (80 miles round trip) per day trip for a number of students if they are bused to Mansfield High School. This would subtract two hours per day from school, study and/or work time.

    b.    The distance would almost kill parental participation in the education of the students because most parents in the area do not have the means or the time to regularly travel to Mansfield for school related matters. Many parents live below the poverty level and the transportation cost would be prohibitive.

    c.    The closing of Pelican would not advance desegregation in the Parish because the students would be going from one predominately black school to another. Pelican already has a greater percentage of white students than Mansfield and is likely to attract more because it is small and people from the area generally get along.

    d.    Mansfield is presently considered as a failing school while Pelican is a passing school. The graduation rate at Pelican is higher than that of Mansfield. It would not further educational goals in the area to close a performing school and send those children to a school that is not performing at the proper level.

    e.    The closing of the school would be assisting in an act of governmental deception. A few years ago a tax was passed based upon representations that the tax was needed to keep Pelican opened [sic].

    f.    Pelican, over the years[,] has proven to be a safer school than Mansfield. There are fewer acts of violence, less drug problems and fewer other problems that interrupt the educational process.

    g.    The school is the center of the community and the community has taken a strong interest in education since the 1800's. The closing

        cannot be measured in just dollars and cents.

    h.    The economic need to close the school is a misplaced concern. The school board in recent years gave out enough bonuses to keep the school opened [sic].

Id. at 2-3. Movants contend that the request to intervene is timely, as it was made less than two months after the School Board voted to close Pelican. Id. at 3. Movants further maintain that no party is protecting their rights, as the School Board has already taken action against their interest and the United States "has failed and refused to meet and discuss with the intervenors if it will seek to protect [their] rights." Id.

## LAW AND ANALYSIS

**I.    Legal Standard.**

Based on the arguments set forth in their motion, Movants appear to be proceeding under Rule 24(a)(2), which provides:

    (a)    Intervention of Right. On timely motion, the court must permit anyone to intervene who:

        . . .

    (2)    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

F.R.C.P. 24. Thus, to intervene under Rule 24(a)(2), Movants must show timeliness and that (1) they claim an interest in the subject of the action; (2) they are so situated that the disposition of the action may as a practical matter impair their ability to protect that interest; and (3) their interest is not adequately represented by existing parties. See U.S. v. Perry County Bd. of Ed., 567 F.2d 277, 278-279 (5th Cir. 1978); Jones v. Caddo Parish Sch. Bd.,

735 F.2d 923, 926-927 (5th Cir. 1984).  "[A]bsence of even one of the four factors required by [R]ule 24(a)(2) is sufficient to defeat intervention."  U.S. v. Franklin Parish Sch. Bd., 47 F.3d 755, 758 (5th Cir. 1995).

## II. Analysis.

The Court will first consider Movants' claimed interest in the subject of this action.  Intervention under Rule 24(a)(2) "requires a direct, substantial, legally protectable interest in the proceedings."  Perry County Bd. of Ed., 567 F.2d at 279.  The Fifth Circuit follows "a somewhat narrow" interpretation of "interest."  Id.  In the area of public school desegregation, the Fifth Circuit has explained:

> [T]here are innumerable instances in which children, parents, and teachers may be deprived of various "rights" (e. g., the "right" to attend a neighborhood school) without having had the opportunity to participate directly in the judicial proceedings which divest them of those "rights."  When these adversely affected groups have sought to intervene, we have frequently declined to permit it.

Id.  The Fifth Circuit recognized that a party seeking to intervene in a desegregation case "must demonstrate an interest in a desegregated school system."  Id.  The petition for intervention should bring to the attention of the court the precise issues which the new group seeks to represent and the way in which the goal of a unitary system has allegedly been frustrated.  See id.  Requests to intervene based on policy grounds unrelated to desegregation, such as "safety and welfare of school children, a large attendance zone that would require considerable travel on the part of some students, and the significant outlay of public funds that would be required," do not meet the requirements of Rule 24(a)(2).  Id. at 279-280 & n. 3.

Here, Movants' grounds for intervention are insufficient under Rule 24(a)(2).  Their

interest in this matter is grounded in policy considerations such as distance, parental involvement, school performance, safety, and community vitality. While these are significant concerns, they are not related to desegregation. Movants referred desegregation in their motion, arguing:

> The closing of Pelican would not advance desegregation in the Parish because the students would be going from one predominately black school to another. Pelican already has a greater percentage of white students than Mansfield and is likely to attract more because it is small and people from the area generally get along.

Record Document 55 at 2. Yet, this bare assertion "fails to constitute a legally cognizable interest in a school desegregation case" because Movants have failed to show how the closing of Pelican "would hamper the avowed goal of eliminating the vestiges of past discrimination." Graham v. Evangeline Parish Sch. Bd., 132 Fed.Appx. 507, 512 (5th Cir. 2005); see also Trahan v. Lafayette Parish Sch. Bd., 616 F.Supp. 220, 222 (W.D. La. 1985) ("The assertion, in conclusionary form, and without supporting argument, explanation, or legal authorities, that the School Board rezoning plan would abridge petitioners' 14th Amendment rights is simply not sufficient to constitute an allegation, much less a showing, that the goal of a unitary system would be frustrated by adoption of the School Board plan.").

Additionally, the Court finds that intervention is unnecessary in this matter because the United States is adequately representing the Movants' interest. "In a school desegregation case, intervention as of right is not appropriate if the [Movants] present issues that existing parties are aware of and stand competent to represent." Graham v. Evangeline Parish Sch. Bd., 223 F.R.D. 407, 434 (W.D.La. 2004). "There is a presumption that government institutions represent the interests of the public at large, particularly where

the United States is plaintiff in a school desegregation case." Id. at 435. Therefore, because the United States is the Plaintiff in this case, Movants "must make a very compelling showing of inadequacy of representation." Id. The United States is presumed to adequately represent Movants unless they can demonstrate adversity of interest, collusion, or nonfeasance." U.S. v. Franklin Parish Sch. Bd., 47 F.3d 755, 757 (5th Cir. 1995).

Movants have failed to show that the United States inadequately represents their interest in this litigation. Movants argued that the "United States Department of Justice has failed and refused to meet and discuss with the intervenors if it will seek to protect the rights of the intervenors." Record Document 55 at 3. Yet, the record easily establishes that the United States has considered information provided by community members in the Pelican area as well as information from the School Board to inform its decision to support the requested closure of Pelican All-Saints High School. The United States also toured the school district and visited each school campus. Additionally, the United States has an interest in achieving a desegregated school system. While Movants may disagree with the United States' approach or litigation decisions made by the United States, such disagreement does not equate to inadequate representation. See U.S. v. City of New York, 198 F.3d 360, 367 (2nd Cir. 1999) ("Representation is not inadequate simply because 'the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief,' or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy."). Movants in this matter have neither alleged, nor does the record support, any adversity of

interest, collusion, or nonfeasance.[2]

## CONCLUSION

The Court finds that Movants have failed to meet the requirements of Rule 24(a)(2). Movants have not shown that they have a direct, substantial, legally protectable interest in this matter or that their interest is not adequately represented by the United States.

Accordingly,

**IT IS ORDERED** that the Motion to Intervene (Record Document 53) filed by the Pelican All-Saints High School Benefit Society, Ronda Clark, Tracy Thomas, James Turner, and Dori Clark be and is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 19th day of June, 2013.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[2]The Court further notes that each of the Movants, if they reside within the Pelican attendance zone, are represented on the School Board by a duly-elected member, Mr. Stevie Clark. See Record Document 60 at 12. Mr. Clark participated and voted in the School Board's 7-4 decision to seek judicial authorization to close Pelican All-Saints High School. Movants' mere disagreement with the actions of a legal majority of the DeSoto Parish School Board does not necessarily indicate inadequate representation. See Perry County Bd. of Ed., 567 F.2d at 280.