UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br><br>　　v.<br><br>DESOTO PARISH SCHOOL BOARD, *et al.*,<br>　　　　Defendants. | No. 5:67-CV-12589<br><br>JUDGE S. MAURICE HICKS JR. |

### JOINT STIPULATION OF DISMISSAL

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), the parties hereby jointly and voluntarily stipulate to dismiss this action *with* prejudice. While this case has been pending for over a half-century, there has been no dispute among the parties since 2014—over a decade ago.

### BACKGROUND

In 1967, the United States filed suit, seeking to enjoin Defendants—the DeSoto Parish School Board, then-board president, then-board members, and then-superintendent—from operating a dual school system based on race. ECF 1 at 2 (the original "Paper Docket Sheet" showing filing of the Complaint). Almost seven decades later, the School Board continues to operate under a January 30, 1970, desegregation order, as subsequently modified by court orders in 1970, 1979, 1980, 1981, 1986, 1989, 1992, 2007, 2011, 2014, and 2024. As summarized in the 2007 Consent Decree, those "orders and applicable federal law required the Board, *inter alia*, to eliminate the vestiges of discrimination, to the extent practicable, in student assignment,

faculty/staff assignment, extracurricular activities, transportation, and school construction and site selection." ECF No. 5 at 1.

Since the parties agreed on (and the Court ordered) new attendance zones in 2014, ECF Nos. 96, 97, there has been no contested litigation. The parties thus are no longer adverse, and there is no case or controversy. This case's seven-decade procedural history confirms this is true:

- **In 1986**, "the Court approved the Board's Motion seeking authorization to close Stonewall Elementary School and Second Ward Elementary School, and to build a new elementary school … to be known as North DeSoto Elementary School." ECF No. 5 at 1.

- **In 1992**, the Board sought, without opposition, the Court's permission to build North DeSoto Middle School. *Id.*

- **In 2007**, the parties agreed that the population growth in north DeSoto Parish necessitated additional construction and renovations of the North DeSoto schools, and the Court approved those actions. *Id.* at 16.

- **Also in 2007 and again in 2011**, the parties agreed to a Consent Decree and Superseding Consent Decree, respectively, to address the United States's concerns regarding student transfers. Those Decrees contained detailed policies for enrolling students, enforcing attendance zones, "approv[ing] transfers" for students, and creating a Transfer Committee to review transfers.[1] ECF Nos. 51, 5. The 2011 Consent Decree was explicitly limited in scope and duration:

---

[1] Approved transfers included: (1) Specialized Academic, Vocational, or Special Education Curriculum Not Offered in the School or District of Residence; (2) Graduating Student Who Moves

2

> This Super[s]eding Consent Decree shall remain in full force and effect for the 2011-2012, 2012-2013, and 2013[-]14 school years. On July 1, 2014, this Super[s]eding Consent Decree shall expire and the Board shall be deemed to be in partial unitary status in the area of student transfers. Prior to the expiration of that term, the United States may move the Court to extend the duration of this decree for good cause, including on the basis that the Board failed during said term to comply with a provision thereof.

The United States did not seek extension of the 2011 Superseding Consent Decree. As such, in 2014, that Decree expired by its own terms, and the Board was "deemed to be in partial unitary status in the area of student transfers." *Id.* The Board, however, has continued to offer Majority-to-Minority ("M-to-M") transfers as required by the Court's other orders. *E.g.*, ECF No. 129.

- **In 2013**, the Board sought authorization, without opposition from the United States, to "close Pelican-All Saints High School and to re-zone" those students to the Mansfield attendance zone. ECF No. 57. The closure was in response to decreasing student enrollment in that area and the District's then multi-million-dollar budget deficit. ECF No. 57-1. The parties agreed to terms and conditions for the closure. ECF No. 57-1 at 2-4. When the Pelican-All Saints High School Benefit Society sought to intervene to oppose the closure, the Court denied intervention because the Benefit Society failed to show a legally protected interest or that "their interest [was] not adequately represented by the United States." ECF Nos. 65, 66.

The Court ultimately allowed the Board to close Pelican-All Saints High School and ordered the Board to "implement … plans designed to improve the quality of

---

During the School Year of Anticipated Graduation; (3) Health of the Student; (4) Safety of the Student; (5) Children of Current District Employees; (6) Majority-to-Minority Transfers; (7) Extracurricular Activities; and (8) Hardship Transfers. ECF No. 51 at 5-10.

3

educational opportunity at Mansfield schools and to ease transition of the students from Pelican-All Saints into those schools[.]" ECF No. 77 at 1-2. Those plans included (among others) "[e]xpanding the STEM program at Mansfield Elementary School," "[p]lacing a literacy integration specialist at each of the three (3) schools in Mansfield," offering "[d]ual enrollment and pre-AP/AP opportunities" at Mansfield High School, assigning a "[d]rop-out interventionist and [a] math interventionist," and implementing the "TAP" System for Teacher and Student Advancement "at all Mansfield schools." *Id.* The Court Ordered the Board to continue those efforts at each school until "th[at] school has received an A, B, or C grade from the Louisiana Department of Education or until further order of this Court, whichever occurs first." *Id.* at 2.

Those obligations ended by the close of the 2014-15 school year (if not before) when the Mansfield schools achieved the required grades: Mansfield Elementary School and Mansfield Middle School received a C grade, and Mansfield High School received a B grade. Those ratings remain the same or better today. The most recent "school report card" from the Louisiana Department of Education gives the entire DeSoto Parish School District an A, Mansfield Elementary a C, Mansfield Middle School a C, and Mansfield High School an A.[2]

- **In 2014**, the parties agreed on (and the Court ordered) new attendance zones. ECF Nos. 96, 97. The parties, along with their demographic experts, Mr. Michael C.

---

[2] School Report Cards for the 2023-24 school year and before are publicly available on the Louisiana Department of Education's website: https://doe.louisiana.gov/data-and-reports/performance-scores. (For 2023-24 data, scroll down to "2023-2024 School Report Cards." For historical data, scroll down to "View School, School System, and State Report Cards.")

4

Hefner for the Board and Mr. Mattew Cropper for the United States, collaboratively developed detailed descriptions of the new attendance zones, ECF. No. 96-1, and maps of the new zones, ECF No. 96-2. Those attendance zones remain in effect today.

- **In 2024**, the Board requested out of an abundance of caution (and the Court issued) an Order clarifying that any student attending school on an M-to-M transfer is "immediately eligible to participate on athletic teams" and that the receiving school is the student's "home school for all purposes." ECF No. 129.

- **Today**, the Board continues to comply with the December 7, 1970 Order's reporting requirements along with the December 30, 1970 Order. *See, e.g.*, ECF Nos. 94, 98, 99, 100, 101, 102, 103, 106, 109, 110, 111, 112, 115, 116, 117, 118, 119, 120, 123, 134, 137. The Board filed its most recent report on October 7, 2025, which includes student and teacher demographic data, transfer data, and updates about the operation of buses, facilities, and any new construction. ECF No. 137. Each report shows that the Board creates and operates bus routes without regard to race "in accordance with the Court's July 23, 1976 Order." *See, e.g.*, ECF Nos. 110, 137. Students are transported based on safety, efficient route times, and where they live. "All facilities, such as gymnasiums, auditoriums, cafeterias, and extracurricular activities are operated and/or offered on a nondiscriminatory basis." *Id.* And the Board has not built any new buildings or sold real property since the 2013 North DeSoto construction. *Id.*

With the benefit of those reports, representatives from the U.S. Department of Justice (the "DOJ") have long monitored the Board. And the parties have been in

regular communication for years. The Board has complied with the DOJ's requests for additional information as well as voluntarily shared information with the DOJ. In 2018 and 2024, the DOJ toured all schools in the District and interviewed principals, assistant principals, central office administrators, and the Superintendent. In 2023 and 2024, the Board updated DOJ on continued population growth in the North DeSoto attendance zone and the Board's efforts to pass bond measures to fund new construction projects. Voters, however, voted down both bond initiatives. The DOJ has raised zero complaints in response to this information. In sum, for over a decade, there has been no dispute among the parties.

## STIPULATION

Given the absence of any remaining dispute, the parties hereby stipulate to dismiss this action *with* prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). This stipulation "constitutes a final judgment," *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 534 (5th Cir. 1978) (citation omitted), "on the merits for the purposes of res judicata," *Anthony v. Marion Cnty. Gen. Hosp.*, 617 F.2d 1164, 1170 (5th Cir. 1980). The stipulation "operates to dismiss the action 'without a court order'" and "automatically" "'strips the district court of subject-matter jurisdiction' over the dismissed action." *Def. Distributed v. U.S. Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) (first quoting F. R. Civ. P. 41(a)(1)(A); then quoting *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 415–16 (5th Cir. 2018)).

Dated: December 30, 2025                    Respectfully submitted,

HARMEET K. DHILLON                          ELIZABETH B. MURRILL
Assistant Attorney General                  Attorney General of Louisiana
Civil Rights Division

| | |
|---|---|
| */s/ Andrew Darlington* <br> Andrew Darlington (FL 1018895) <br> Counsel <br> Civil Rights Division <br> U.S. Department of Justice <br> 950 Pennsylvania Ave. NW <br> Washington, D.C. 20530 <br> Telephone: 202-550-5305 <br> Andrew.Darlington@usdoj.gov <br><br> *Counsel for Plaintiff* | */s/ Morgan Brungard* <br> MORGAN BRUNGARD (LA 40298) <br> Deputy Solicitor General <br> Louisiana Department of Justice <br> Office of the Attorney General <br> 1885 N. Third St. <br> Baton Rouge, LA 70802 <br> (225) 999-6864 <br> BrungardM@ag.louisiana.gov <br><br> ROBERT L. HAMMONDS <br> Louisiana Bar Roll No. 6484 <br> PAMELA WESCOVICH DILL <br> Louisiana Bar Roll No. 31703 <br> JOHN RICHARD BLANCHARD <br> Louisiana Bar Roll No. 37036 <br> TIMOTHY J. RIVERIA <br> Louisiana Bar Roll No. 39585 <br> JOHN SCOTT THOMAS <br> Louisiana Bar Roll No. 22635 <br> HAMMONDS, SILLS, ADKINS, GUICE, NOAH & PERKINS LLP <br> 2431 S. Acadian Thruway, Suite 600 <br> Baton Rouge, LA 70808 <br> Telephone (225) 923-3462 <br> Facsimile (225) 923-0315 <br><br> *Counsel for Defendants* |